# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Criminal Case No. 17-cr-137-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **RODRICK HARRIS**,

    Defendant.

---

## ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION

---

This matter is before me on the Government's Motion for Reconsideration of the Order Setting Re-Opened Sentencing Hearing. (ECF No. 271.) For the reasons set forth below this motion, with enormous frustration, is granted.

### I. BACKGROUND

On October 24, 2018, I held a sentencing hearing in this case, at which time I sentenced Defendant Rodrick Harris to a custodial prison term of 66 months. I sentenced Mr. Harris based on his conviction by guilty plea to Count Two of the Indictment, which charged him with Distribution and Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). To date, the written judgment of conviction for Mr. Harris has not been entered.

Almost immediately after adjourning Mr. Harris's sentencing hearing—indeed, as I walked back into my chambers—I began to have significant doubts about the

substantive reasonableness of the 66-month sentence I had just imposed. I thereafter engaged in a careful re-evaluation and reconsideration of the record in this case, including the arguments of counsel and my colloquy with them at the sentencing hearing, as well as my own reasons for deciding in the first instance that the goals of the sentencing statute required a variant sentence below the advisory guideline sentencing range of 87–108 months.

I ultimately concluded that the 66-month custodial sentence I announced orally at Mr. Harris' sentencing hearing is not a substantively reasonable sentence. I freely acknowledge that I erred in imposing that sentence on Mr. Harris. In reaching my reconsidered decision that a 66-month sentence exceeds the bounds of substantive reasonableness under the circumstances, I was particularly influenced by the following:

- The uncontroverted record evidence establishes an extensive and years-long history of physical abuse of Mr. Harris, which he endured as a child and an adolescent. The record also reflects that, in 2017, Mr. Harris was seen at the Stout Street Clinic in Denver, and as result of his treatment evaluations there, he was diagnosed with schizophrenia, depression, anxiety, and post-traumatic stress disorder;
- The appellate authority that makes clear, and as I have held on numerous occasions in the course of sentencing scores of defendants, these historical characteristics of Mr. Harris, which include his physical abuse and trauma as a youth, as well as his documented history of mental illnesses, are legitimate grounds in and of themselves for a downward

2

variance. *United States v. Wallace*, 605 F.3d 477, 479 (8th Cir. 2010) (district court properly considered under 18 U.S.C. § 3553(a) the extensive physical abuse the defendant suffered as a child); *United States v. Wyrick*, 416 F. App'x 786 (10th Cir. 2011) (district court properly considered the role defendant's mental illness played in his offense as a factor under § 3553(a));

- The relevant charged conduct underlying Mr. Harris's guilty plea consists of about a half-dozen sales of street level, small or user quantities of a controlled substance made, not to a general member of the public, but during a carefully orchestrated series of drug sales to a confidential informant;

- The lack of evidence in the record establishing, or even suggesting, that any of the relevant charged conduct included violence or a threat of violence;

- My policy disagreements with the Guidelines with respect to the sentencing range applicable to this charged conduct, as I detailed at the initial sentencing hearing, and which I expressly incorporate here by reference; and

- The express concession by the Government in its Response to Mr. Harris's Motion for a Downward Variance (ECF No. 260) that, although Mr. Harris is the first-named defendant in this four-defendant prosecution, he "played a less-significant role than some of his co-defendants[.]" *Id*. at 3. This concession by the prosecution is consistent

with another critical sentencing fact which it also candidly acknowledged, *viz*., that "[t]he defendant was distributing small amounts of crack cocaine consistent with user amounts or small sub-distribution amounts." *Id*.

After considerable additional reflection and weighing of the factors just enumerated here, it became my reconsidered view that—subject to the Government's opportunity to persuade me otherwise—a custodial sentence of **42 months** more accurately reflects a proper application of the § 3553(a) sentencing factors to this Defendant, more faithfully comports with my policy disagreements with the applicable sentencing Guideline, and most closely adheres to § 3553's parsimony clause—that the custodial sentence I impose on Mr. Harris be no greater than necessary to, among other things, reflect the seriousness of the offense, adequately deter Mr. Harris from future criminal conduct, and protect the public from further crimes by Mr. Harris.

Given this error, I wanted to rectify my mistake as quickly as I could, especially because something as precious as a person's freedom, and the length of time he is deprived of that freedom, remained squarely at stake. On October 25, 2018 (the day after the sentencing), my staff e-mailed counsel for the Government, counsel for Mr. Harris, and the probation officer, announcing my intent to re-open the sentencing hearing due to my conclusion that Mr. Harris's 66-month sentence was greater than necessary to accomplish the goals of sentencing. The following day, I ordered that a re-opened sentencing hearing be held on November 2, 2018 so I could rectify the sentencing error I made at the original hearing. (ECF No. 270.)

In response to that order, the Government filed the motion at issue, requesting

4

that I reconsider my decision to re-open Mr. Harris's sentencing hearing. (ECF No. 271.) The Government contends that based on the language of Federal Rule of Criminal Procedure 35, as well as case law applying the provisions of that rule relevant here, that I am without authority or jurisdiction to impose any sentence other than what I announced orally on October 24, 2018. I subsequently vacated the re-opened sentencing hearing until such time as I could rule on the Government's motion. (ECF No. 276.) The Defendant opposes the motion. (ECF No. 275.)

### III. ANALYSIS

Rule 35(a) states, "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Rule 35(c) defines "sentencing" as "the oral announcement of the sentence." These rules have certain surprising aspects.

First, Rule 35(a)'s 14-day timeframe is jurisdictional, and so not waivable. *See United States v. McGaughy*, 670 F.3d 1149, 1155–59 (10th Cir. 2012).

Second, a district judge acting under Rule 35(a) must "correct [the] sentence" within 14 days of oral announcement. Under the current application of Rule 35(a) in this Circuit, it is apparently not enough that a defendant files a motion within this timeframe, or—more applicable here—that the district judge announces his or her intent to re-open the sentencing. *See id.*; *see also United States v. Townsend*, 33 F.3d 1230, 1231 (10th Cir. 1994) (under prior codification of Rule 35(a), which at the time provided only seven days to act, holding that the district judge was without jurisdiction to reduce a defendant's sentence because the district judge's *sua sponte* re-opened sentencing

hearing took place more than seven days after orally announcing the original sentence).

Third, "clear error," whatever else it means, does not appear to include the results of re-weighing the § 3553(a) factors. *See* 3 Wright, King & Klein, *Federal Practice & Procedure—Criminal* § 613 nn.4–5 (4th ed., Sept. 2018 update) (citing authorities). Moreover, it cannot be gainsaid that there was here no erroneous "arithmetical" or "technical" basis for the original custodial sentence I imposed.

I recognize that these authorities significantly constrain me. I cannot represent my conclusion that 66 months is substantively unreasonable as "clear error" within the current interpretation of Rule 35(a) because that conclusion arose from my reevaluation of the § 3553(a) factors. And I cannot act on my error in any event because, even if the "clear error" basis of Rule 35(a) applied, again given the current construction by the Tenth Circuit Court of Appeals of the rule, more than 14 days have elapsed since I orally announced the 66-month prison term.

Apparently my only hope to correct my error is if I may fairly characterize my words at the sentencing hearing as something other than "the oral announcement of the sentence," Fed. R. Crim. P. 35(c), meaning that the 14-day time period has not yet commenced. Tenth Circuit authority on that matter is not presently favorable in these circumstances.

In *United States v. Luna-Acosta*, 715 F.3d 860 (10th Cir. 2013), the district judge orally announced a sentence of 33 months followed by 2 years of supervised release. *Id*. at 862. The defendant's counsel then informed the district judge that amended Sentencing Guidelines would go into effect in a couple of weeks, and that those

6

amended Guidelines recommended no supervised release for the offense in question. *Id.* Counsel then requested that the district judge eliminate the supervised release term or continue the sentencing until after the amended Guidelines came into effect. *Id.* The district judge chose the latter and scheduled a second sentencing hearing for about a month later. *Id.*

That second sentencing hearing, although supposedly convened only to take advantage of the amended supervised release Guidelines, also revisited the custodial sentence. The district judge was convinced by an argument he had ignored at the previous hearing that the custodial sentence should be only 12 months, not 33. *Id.* Five months later, however, the district judge entered a written judgment re-imposing the 33-month sentence. *Id.* He explained that the only thing left open after the first sentencing hearing was the matter of supervised release. *Id.* Accordingly, he concluded that he had acted without jurisdiction to reduce the custodial sentence because his original oral announcement of 33 months had started the Rule 35(a) clock, which had expired by the time of the second sentencing. *Id.* The defendant appealed this judgment.

The Tenth Circuit began its review by observing that "Rule 35 does not conclusively [resolve]" whether the district court had jurisdiction at the second sentencing hearing to revise the custodial sentence because, although "Rule 35(c) defines sentencing as 'the oral announcement of the sentence,' nothing in the rule requires or suggests that whatever term or terms of imprisonment the district court first utters during a hearing is to be treated as the sentence for purposes of the rule." *Id.* at

7

864–65. The Tenth Circuit chose to adopt the Fifth Circuit's holding that "a sentence is not final—and Rule 35(a) does not apply—when there is 'no formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished.'" *Id*. at 865 (quoting *United States v. Meza*, 620 F.3d 505, 509 (5th Cir. 2010)). The Tenth Circuit agreed with the Fifth Circuit that this construction was necessary to avoid "the 'draconian rule' that 'the district court's initial formulation of the sentence is the type which instantaneously strips the district court of its jurisdiction to sentence criminal defendants and immediately vests such jurisdiction with this court.'" *Id*. (quoting *Meza*, 620 F.3d at 508) (emphasis removed).

In light of these principles, the Tenth Circuit concluded on the record before it that the district judge's continuance of the sentencing hearing had not created the necessary formal break in the proceedings. *Id*. at 866–67. Although the district judge's subjective intent was only to revisit supervised release, no party had argued, much less persuaded the Tenth Circuit, that a district judge may "finalize only part of a sentence." *Id*. Accordingly, the oral announcement of 33 months did not trigger Rule 35(a)'s 14-day window, and so the Tenth Circuit reversed with instructions to re-impose the 12-month sentence. *Id*. at 867.

I recognize that, by any objective standard, there *was* a formal break in Mr. Harris's sentencing proceedings from which to logically and reasonably conclude that sentencing had finished. I did not continue the sentencing hearing, nor did I express at the original sentencing hearing–and before I left the bench–reservations or an intent to give the matter further consideration. I adjourned the hearing and left the

8

bench in the manner I normally do for all sentencing hearings.  Accordingly, I cannot claim that the Rule 35(a) clock, as it is currently viewed by the Tenth Circuit, did not begin to run.  As a result, I am powerless under the current state of the law in this Circuit to revisit Mr. Harris's sentence.

This powerlessness is immensely frustrating, for many reasons.  The root of the problem is the notion that—unlike in nearly every other context, civil or criminal—I cannot re-evaluate, reconsider, or otherwise take a second look at my oral sentencing pronouncement *even though I have yet to enter judgment*.  Cf. *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1298 (10th Cir. 2011) (in a civil proceeding, "a district judge may revisit and reconsider not only his or her own interlocutory rulings but also those of a disqualified predecessor"); *United States v. Loera*, 182 F. Supp. 3d 1173, 1205–06 (D.N.M. 2016) (in a criminal proceeding where the defendant moved to reconsider an order denying suppression of evidence, applying the same standard as in a civil proceeding "when a district court reconsiders one of its own interlocutory orders").

I fully appreciate that, when it comes to sentencing, I should not be permitted to take back my own words unless the defendant is present in court or has waived that right, see Fed. R. Crim. P. 43(c)(1)(B).  The defendant's right to be present at sentencing and to hear that pronouncement from the bench is grounded in the Sixth Amendment's confrontation clause and, in federal court, the Fifth Amendment's due process clause.  *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987) (en banc).  And due process also likely entitles the Government to be heard in the same proceeding.  So I may not announce a sentence in open court, reconsider it off the

bench, and simply enter a written judgment that, while consistent with my newly reconsidered views, is inconsistent with the sentence I announced orally in open court and in the presence of both the defendant and the prosecution. Rule 35(a) and (c) rightly protect a defendant from this procedure, and also happen to protect the Government's interests, although that is not the purpose of the rule.

As my order setting a re-opened sentencing hearing demonstrates, I had no intention of entering any judgment that I had not first announced in open court at a re-opened sentencing hearing and before all parties. But Rule 35(a) and (c) still constrain me in ways that I cannot fathom.

The drafters of Rule 35 surely understood that Congress had delegated to them authority to decide when a custodial sentence may be modified. *See* 18 U.S.C. § 3582(c)(1)(B) ("The court may not modify a term of imprisonment once it has been imposed except that * * * the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure . . . .").[1] But without explanation, the drafters limited district judges to "arithmetical, technical, or other clear error," Fed. R. Crim. P. 35(a), and stated in the committee notes that this authority "extend[s] only to those . . . errors which would almost certainly result in a remand of the case to the trial court for further action," Fed. R. Crim. P. 35, Advisory Committee Notes to 1991 Amendments. The drafters further

---

[1] This authority was added in 1984, before the 1991 amendments to Rule 35 that, in substance, continue to control today. *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, Title II, § 212(a)(2), 98 Stat. 1998. It was largely 18 U.S.C. § 3582(c)(1)(B) that persuaded the Tenth Circuit that Rule 35(a)'s 14-day window is jurisdictional. *See McGaughy*, 670 F.3d at 1157–58.

stated,

> The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

*Id*. This unfortunately cramped formulation by the Advisory Committee wholly ignores the possible circumstances, such as are present here, where the interest of justice manifestly requires the sentencing judge to correct a substantively unreasonable custodial sentence prior to the entry of judgment, *even in cases in which no arithmetic, technical or clear error has been made.*

Stated differently, missing in this Note is any recognition of (i) the § 3553(a) factors as a source of potential error, and (ii) any potential error beyond a Guidelines-related error or a "simpl[e]" change of mind, such as a good faith recognition that the § 3553(a) factors had been improperly weighed. I am strongly of the view that both oversights implicitly denigrate the cardinal importance of the § 3553(a) sentencing factors, treating them as unworthy of serious consideration.[2]

I point out that, before entry of a written judgment, I can correct many previously entered orders in criminal cases if I believe I have made a mistake. I can modify probation and supervised release conditions at essentially any time by consent, or after a hearing. *See* Fed. R. Crim. P. 32.1(c). Although I have found no rule addressing the

---

[2] Appellate courts *review* a sentence's substantive reasonableness under an abuse-of-discretion standard, *Gall v. United States*, 552 U.S. 38, 51 (2007), but surely this does not authorize the district judges to take the § 3553(a) factors less seriously.

11

issue, I have revised the restitution and forfeiture portions of a sentence upon consent of the parties. But given the present development of the case law construing application of Rule 35(a) to circumstances as are now before me, the matter of most critical importance—how long I will deprive a person of his or her liberty—is almost always beyond my control if I announce it orally and a sufficiently "formal break in the proceedings" follows. *Luna-Acosta*, 715 F.3d at 865 (internal quotation marks omitted).

This state of affairs supposedly flows from the language and purpose of Rule 35, but even *Luna-Acosta* did not confine itself to the literal meaning of that rule. A defendant has been sentenced under the rule when a judge orally announces the sentence (Rule 35(c)'s only requirement) *followed by* a formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished (*Luna-Acosta*'s gloss). The Tenth Circuit adopted this construction to prevent an otherwise "draconian" result. *Id*. Yet the rule, as glossed by the Tenth Circuit, quite demonstrably remains draconian in that the custodial portion of a sentence is, in most circumstances, irrevocable upon adjournment of the sentencing—even before the judgment of conviction has been entered and before the time to take an appeal has expired. This result necessarily obtains notwithstanding the fact that a defendant's Fifth and Sixth Amendment rights would not be violated by re-visiting the sentence in a re-opened and in-person sentencing hearing, and even where, as here, if it would be to the defendant's significant benefit to re-open said hearing and have a custodial sentence of shorter duration announced in his or her presence.

I appreciate that there is wisdom in narrowing a *defendant's* opportunity to move

for reconsideration of a prison sentence, both in terms of grounds for reconsideration and the time in which to move for reconsideration. But in my view it serves no purpose consistent with the goals and purposes of the sentencing statute to restrict the *sentencing judge* from reconsideration of a custodial sentence *sua sponte*, where: (a) the judge has informed the parties, prior to the expiration of Rule 35(a)'s 14-day sentence modification period, that he or she is considering *reducing* the sentence announced orally at the sentencing hearing; (b) the judge has also informed the parties, again within the aforesaid 14-day period, that he or she intends to hold a re-opened, in-court hearing, in the mandatory presence of the defendant, before taking any action to reconsider the oral sentence; and (c) no judgment of conviction has been entered, no appeal has been taken, and the time for appeal has not yet expired. Surely this circumstance is rare enough to be accommodated on a case-by-case basis, with no need of a rule to prevent systemic mischief.

Arguably, the motivations behind the Fifth Amendment's double jeopardy clause and/or the Eighth Amendment's cruel and unusual punishments clause could form the basis for a constitutional right of criminal defendants to know where they stand, so to speak, at the conclusion of a sentencing hearing—or in other words, a right to rely on a particular sentence, once pronounced, without worry that it might change based on the judge's later misgivings. Assuming this right exists, "like most rights, [it] can be waived." *United States v. Ornelas*, 828 F.3d 1018, 1021 (9th Cir. 2016) (Tymkovich, C.J., sitting by designation) (referring to the right to be present at sentencing), *cert. denied*, 137 S. Ct. 522 (2016). And what defendant would not gladly waive that right for a *reduced*

prison term?  Conversely, the Government—which is not a natural person and cannot suffer from uncertainty—has no similar interest to protect.

The inequity of Mr. Harris's predicament has, if anything, become even more apparent now that I have begun to sentence his co-defendants.  Only yesterday I sentenced co-defendant Louis Rodriguez to 45 months in prison.  Not only had Mr. Rodriquez been convicted of the more serious conspiracy to distribute controlled substances count charged in the indictment, and Mr. Harris had not, this co-defendant has a lengthier and more serious criminal history than does Mr. Harris.  Yet Mr. Harris will serve a **21 month longer sentence** than Mr. Rodriguez because I am prohibited from revisiting his custodial sentence and correcting my mistake.

It is inconceivable to me that 18 U.S.C. § 3582(c)(1)(B) and Rule 35(a) and (c) were meant to operate this way, exalting form over substance in a manner which works to the clear detriment of Mr. Harris, and to the debasement of what should be the clarion call for substantively just and reasonable sentences in federal court.  Assuming Mr. Harris appeals his sentence, I call on the Tenth Circuit to reassess its current application of Rule 35(a) to circumstances such as those presented by Mr. Harris.

## IV.  CONCLUSION

For the reasons set forth above, the Government's Motion for Reconsideration of the Order Setting Re-Opened Sentencing Hearing (ECF No. 271) is reluctantly GRANTED;

I DIRECT the Probation Office to prepare and forward to me for my review a proposed judgment of conviction which in all respects reflects the sentence I

announced orally at Mr. Harris' October 24, 2018 sentencing hearing; and

Defendant's Unopposed Motion to Request a Status Conference (ECF No. 279) is DENIED AS MOOT.

Dated this 1st day of February, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge